**IN THE COURT OF APPEALS OF IOWA**

No. 24-1274
Filed January 9, 2025

**IN THE INTEREST OF M.A.,**
**Minor Child,**

**F.F., Mother,**
    Appellant.
_____

    Appeal from the Iowa District Court for Fayette County, Linnea M.N. Nicol, Judge.

    A mother appeals the juvenile court's dispositional review order and finding of reasonable efforts. **AFFIRMED.**

    Kristin R. Schiller Herman, Calmar, for appellant mother.

    Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

    Sarah Dooley Rothman of Rothman Law Office, Independence, attorney and guardian ad litem for minor child.

    Considered by Schumacher, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A mother appeals the juvenile court's dispositional review order and finding of reasonable efforts.  Upon our de novo review, we affirm.

## I.      *Background Facts and Proceedings.*

We have previously discussed this case's history in a separate appeal:

> This family has been involved in department-of-health-and-human-services investigations and the juvenile court for years, which has included child abuse assessments founded due to dangerous substances, presence of illegal drugs, and denial of critical care.  The parents also have histories of criminal activity, primarily relating to drug use.
> The mother and father divorced in 2017, pursuant to a stipulated decree, agreeing to shared physical care of their three children: M.A., born in 2006; O.A., born in 2007; and M.A., born in 2010.[1]  In 2019, the district court modified the dissolution decree, placing physical care of the children with the father due to the department's involvement.  Thereafter, the father moved with the children to Nebraska without input from the mother, limiting the mother's contact with the children.  In response, the mother filed a petition to modify the decree, requesting physical care of the children.

*In re M.A.*, No. 24-0092, 2024 WL 1548812, at *1 (Iowa Ct. App. Apr. 10, 2024).

In 2021, the district court granted the mother's modification request based on the father's "actions in alienating his children from" their mother, placing physical care of the children with her.  *Id.*  As a result, M.A. returned to live with her mother in Iowa.

In 2023, another department investigation opened after it received allegations of methamphetamine use by the mother.  Both "M.A. and M.A. reported being aware the mother was 'using drugs again,' and stated they were

---

[1] This appeal concerns only one of the children: M.A., born in 2010.  Both the elder M.A. and O.A. have reached the age of majority and are not subjects of this juvenile proceeding.

'responsible' for caring for their younger half-siblings," allegedly while their mother used drugs in the basement. *Id.* The children were removed from their mother's custody and adjudicated in need of assistance (CINA).[2] *Id.* While M.A. was initially placed with her paternal grandmother, she eventually returned to her father's home in Nebraska pursuant to the Interstate Compact on the Placement of Children (ICPC).

Throughout the proceedings, the department's two main concerns were the mother's substance use and her inability to communicate with M.A. To her credit, the mother made significant progress in addressing the former. She completed inpatient treatment, and even post-release, continued to maintain her sobriety in outpatient treatment. As of the last hearing, the mother was actively engaging in both treatment and medication management. Her two younger children were even returned to her custody, and their juvenile proceedings were dismissed.

But in regard to the latter issue, the mother did not address her poor relationship with M.A. From the beginning of the proceedings, M.A. adamantly expressed her desire to live with her father. Before the finalization of the ICPC home study, she "look[ed] forward to being able to move back to live with [her] dad in Nebraska." And once she did return to Nebraska, she thrived. According to the department, M.A. was an excellent student and "very artistic." M.A.'s guardian ad litem opined that she was "happy and healthy [in her father's home] and able to be a teenager, not having to parent her younger half-siblings" and that the mother

---

[2] M.A. was removed along with her two younger half-siblings, but they went to separate placements. The two younger children are not at issue in this appeal, so we do not address them unless necessary.

shows no empathy for the lingering effects that [her substance use] has had on her teenagers. She belittles the concerns that [M.A.] has about her half-siblings while in their mother's care, ignoring the reality that [M.A.] has lived through [the mother's] various completions of treatment, periods of sobriety and relapses, and knows firsthand the negative impact they can have on a child.

The guardian ad litem further described the mother's contacts with M.A. and her older sister as being "consistently aimed at denying her responsibility for the situation, blaming the teens for the situation that she created, and have not shown an ability to have a positive relationship with them." *M.A.*, 2024 WL 1548812, at *1. The mother demanded that M.A. be available at all times in case she called, but she preferred to call M.A. outside of the designated timeframes, instead reaching out while M.A. "is in school or later in the evening when she's getting ready for bed." Due to these concerns, the guardian ad litem recommended only supervised visitation between the mother and M.A. M.A. herself stated "she only goes on visits with her mom 'because she knows she has to' and 'to see her siblings.'" Before the final hearing, she "submitted a thoughtful and detailed letter to the court, expressing her desire to remain in Nebraska with the father." *Id.* at *3.

In October 2023, the mother moved for reasonable efforts, alleging the department failed to provide services such as visitation, family counseling, and individual counseling for M.A. After a hearing, the district court denied the motion, finding the department's efforts were reasonable. The mother appealed, and we affirmed, finding that continued removal from the mother's custody was in M.A.'s best interests and the department made reasonable efforts toward reunification. *See id.* at *4–5. Less than one month later, the mother renewed her motion for

reasonable efforts. After a second hearing, the court denied it. The mother appeals again.

## II. Review.

"We review child-in-need-of-assistance proceedings de novo." *In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021). While not binding on us, "[w]e give weight to the juvenile court's factual findings." *Id.*

## III. Discussion.

The mother challenges the court's dispositional review order on three grounds: (1) alleged error in its removal decision; (2) alleged error in its transfer-of-custody determination; and (3) finding that the department made reasonable efforts toward reunification. We consider each argument in turn.

### A. Continued Removal from the Mother's Custody.

The mother first argues that the court erred in its finding that M.A. should continue to be removed from her custody. But she focuses solely on the improvements she has made in her substance use and fails to address the department's other central concern: the mother's inability to have "appropriate contact" with M.A. During the mother's first appeal, we affirmed the continued removal of M.A. from her custody, finding the "conflict between the mother and [M.A.] persisted, which needed to be addressed before their relationships could be repaired." *M.A.*, 2024 WL 1548812, at *3. In the month between that appeal and her second motion, no substantial changes occurred. In fact, relations may be even more strained, with the court finding that the mother had an "[un]reasonable expectation" that M.A. pick up the phone at all hours of the day instead of following the scheduled times. We therefore similarly find that the mother has not mended

her broken relationship with her daughter, which is required before reunification. Accordingly, we affirm the continued removal from her custody.

B. *Transfer of Custody to the Father.*

The mother next contends the court erred in transferring custody of M.A. to the father.[3] But this transfer of custody occurred in August 2023 and was not timely appealed. In April 2024, we affirmed the transfer of custody based on error-preservation and res judicata principles. *See id.* Accordingly, we must affirm again. *Id.* (collecting cases summarizing these principles and finding such precedent precludes the mother's claim).

C. *Reasonable-Efforts Finding.*

Finally, the mother contends the department did not make reasonable efforts based on the lack of visitation, individual therapy, and family therapy. *See* Iowa Code § 232.102(6) (2023) (requiring the department to make "reasonable efforts" toward reunification). But we find that the visitation issue is not preserved for our review. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "Normal error-preservation rules apply in CINA cases." *M.A.*, 2024 WL 1548812, at *3. While it is unclear whether the court ruled on this issue,[4] it was not raised by the mother. In her most recent motion for reasonable efforts, the mother only alleged

---

[3] The mother actually challenges the "continued transfer." But her analysis focuses solely on the removal itself, so that is how we interpret her argument.

[4] It is unclear whether the juvenile court actually ruled on the visitation issue because it adopted the exact same language from its first order denying the mother's reasonable-efforts motion and did not provide additional analysis.

inadequate therapy services and did not request additional visitation. Because she did not raise the issue before the court, we do not reach its merits. *See Meier*, 641 N.W.2d at 537. But error preservation aside, the mother has not established any changes to visitation in the month between her previous appeal and her second motion. We have already determined that the department's visitation efforts were reasonable, especially in light of "the distance between the mother's home and the father's home." *M.A.*, 2024 WL 1548812, at *4. In the absence of any additional findings or facts since that decision, we must affirm.

As for the delays in therapy, we are not persuaded by the mother's arguments. In her previous appeal, the court recommended both the mother and M.A. participate in individual therapy before attempting any joint sessions. Since that time, both have been participating in individual therapy but, "neither [M.A.] nor [her mother] were ready to begin joint counseling." The court did not find that this delay was attributable to the department, but instead, it determined that the mother is "not willing to change to improve [her] relationship" with M.A. "Reunification is a *goal*, not a mandate." *D.D.*, 955 N.W.2d at 196 (Christensen, C.J., concurring specially) (finding a mother cannot challenge reasonable efforts when her own actions precluded reunification). We find that the department has made reasonable efforts with M.A.'s participation in individual therapy. But until the mother is willing to address the "real barrier," which is "her own behavior," the department is unable to do more. Accordingly, we affirm the court's denial of the mother's motion for reasonable efforts.

*IV.*     *Disposition.*

Because the continued removal of M.A. from the mother's custody is in her best interests and the department made reasonable efforts towards reunification, we affirm.

**AFFIRMED.**